**United States District Court**
**District of Massachusetts**

```
_____
                                  )
RISKTIMETRY ANALYTICS, LLC,       )
        Plaintiff,                )
                                  )
        v.                        )        Civil Action No.
                                  )        10-10969-NMG
ALTAIRA, LLC, LINEDATA SERVICES   )
INC. and LINEDATA SERVICES S.A.   )
        Defendants.               )
_____ )
```

**MEMORANDUM & ORDER**

GORTON, J.

Plaintiff Risktimetry Analytics, LLC ("Risktimetry"), a Delaware limited liability company with its principal place of business in Utah, has filed a complaint against Altaira, LLC ("Altaira"), Linedata Services, Inc. ("Linedata U.S.A.") and Linedata Services, S.A. ("Linedata France") alleging four counts of direct and contributory copyright infringement.

I.   **Background**

Risktimetry is the owner of a copyright on a package of computer software which is utilized by the financial services industry for pre-trade analysis, portfolio assessment, hedge assessments and risk oversight ("the Copyrighted System"). That software program was originally created by Theoretics, Inc. ("Theoretics"), formerly a Utah corporation which ceased doing business in 2005 and subsequently filed for Chapter 7 relief in March, 2008. After Theoretics filed for bankruptcy, the rights

-1-

to the Copyrighted System were assigned to Risktimetry in December, 2009.  Long before the assignment, however, in June, 2005, Theoretics formed a new entity called Altaira, LLC.  In August, 2007, Altaira released a new portfolio and risk management software ("the Altaira System").  In July, 2008, Linedata U.S.A. partnered with Altaira to incorporate the Altaira System into the Linedata product line and to market it under its own brand name.

Risktimetry filed its complaint in this Court on June 10, 2010.  It alleges that, without Risktimetry's permission, Altaira 1) knowingly and willfully copied and/or created a substantially similar derivative work of the Copyrighted System and 2) entered into an exclusive partnership with Linedata U.S.A. to license a copy of the purported infringing software.

Altaira moves to dismiss the claim against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  A scheduling conference was held on October 21, 2010, at which time the Court allowed Altaira's motion for leave to file a reply to the plaintiff's opposition and informed the parties that the motion to dismiss would be decided promptly.  Since then the plaintiff has filed a sur-reply to the motion which the Court will consider (this time only) despite the fact that it was not accompanied by a motion for leave to file.

II.  __Motion to Dismiss for Lack of Personal Jurisdiction__

    **A. Motion to Dismiss Standard**

    To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." __Bell Atl. Corp.__ v. __Twombly__, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  __Nollet__ v. __Justices of the Trial Court of Mass.__, 83 F. Supp. 2d 204, 208 (D. Mass. 2000) __aff'd__, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  __Langadinos__ v. __Am. Airlines, Inc.__, 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied.  __See__ __Nollet__, 83 F. Supp. 2d at 208.

    Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not, however, applicable to legal conclusions.  __Ashcroft__ v. __Iqbal__, 129 S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action.  __Id.__  Accordingly, a complaint does

not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct.  Id. at 1950.

**B.   Personal Jurisdiction Standard**

On a motion to dismiss for want of personal jurisdiction, the plaintiff bears of the burden of demonstrating that jurisdiction is 1) statutorily authorized and 2) consistent with the Due Process Clause of the United States Constitution.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009).  The most common approach courts take for determining whether the plaintiff has met his or her burden is the "prima facie evidentiary standard".  Adelson v. Hananel, 550 F.3d 43, 48 (1st Cir. 2007).  Under this standard, a court considers "whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  Id.  The Court accepts properly supported proffers of evidence by the plaintiff as true and considers facts put forward by the defendant, to the extent they are uncontradicted by the plaintiff.  Newman v. European Aeronautic Defence & Space Co. Eads N.V., 700 F. Supp. 2d 156, 159 (D. Mass. 2010).

Because the Massachusetts long-arm statute reaches to the full extent that the Constitution allows, the Court may proceed directly to the Constitutional analysis.  See Sawtelle v.

-4-

<u>Farrell</u>, 70 F.3d 1381, 1388 (1st Cir. 1995); <u>Tatro</u> v. <u>Manor Care, Inc.</u>, 625 N.E.2d 549, 553 (Mass. 1994).  Due Process requires that the defendants have "minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  <u>Int'l Shoe Co.</u> v. <u>Washington</u>, 326 U.S. 310, 316 (1945).

A court may exercise either general or specific personal jurisdiction over an out-of-state defendant.  <u>Angela Adams Licensing, LCC</u> v. <u>Dynamic Rugs, Inc.</u>, 463 F. Supp. 2d 82, 84 (D. Me. 2006).  General jurisdiction exists when the defendant has engaged in "continuous and systematic activity," unrelated to the suit, in the forum state.  <u>Pritzker</u> v. <u>Yari</u>, 42 F.3d 53, 60 (1st Cir. 1994).  Specific jurisdiction exists where the plaintiff's cause of action arises from or relates to the defendant's contacts with the forum state. <u>Id.</u>

### C.   General Jurisdiction

Altaira is a Utah limited liability company with its principal place of business in Park City, Utah.  Altaira claims that it has never engaged in substantial and continuous business activities for profit nor committed any acts of copyright infringement within Massachusetts.  Altaira maintains that, in Massachusetts, it has no office or place of business, is not registered to do business, has no officers, employees, salespeople or agents, does not own, rent, lease, or possess any

real or personal property, does not maintain a mailing address or telephone listing, and does not regularly contract with Massachusetts residents.

Risktimetry does not contest any of those assertions.  Thus, Altaira does not appear to have the kind of substantial and continuous contacts with Massachusetts that would confer general jurisdiction over Altaira to Massachusetts courts.  The Court turns, therefore, to a consideration of specific jurisdiction over Altaira.

### D.   Specific Jurisdiction

The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate.  The Court inquires whether 1) the claims arise out of or are related to the defendants' in-state activities, 2) the defendants have purposefully availed themselves of the laws of the forum state and 3) the exercise of jurisdiction is reasonable under the circumstances.  See, e.g., Platten v. HG Bermuda Exempted, Ltd. 437 F.3d 118, 135 (1st Cir. 2006); Sawtelle, 70 F.3d at 1389.

#### 1.   Relatedness

The "relatedness" test is a "flexible, relaxed" standard that focuses on the nexus between the plaintiff's claim and the defendants' contacts with the forum state.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009); Ticketmaster-New York v. Alioto, 26 F.3d 201, 206-07 (1st Cir.

2004).  In contract cases, the court must ask "whether the defendant's contacts with the forum state were instrumental either in the formation of the contract or in its breach." Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 290 (1st Cir. 1999).

Altaira's contacts with Massachusetts consist of its alleged formation of an exclusive partnership with Linedata U.S.A., a Massachusetts corporation with its principal place of business in Massachusetts, for the sale of the allegedly infringing software, the Altaira System.  Risktimetry maintains that Altaira and Linedata U.S.A. formed an "exclusive strategic partnership" to sell the Altaira System and that Altaira exclusively licensed the Altaira System to Linedata U.S.A..

Altaira responds that the partnership between Altaira and Linedata U.S.A. was a "future goal" that was never realized, the Linedata Risk Analytics solution was never completed and no Altaira software was ever sold or distributed to third parties by Linedata.  Altaira submits an affidavit from its managing director, Blaise Labiola, stating that the only agreement entered into between Altaira and Linedata U.S.A. was a revenue sharing agreement which did not involve the transfer of money or software, failed to produce workable software and expired on June 1, 2010.  Mr. Labiola further asserts that any communications between Altaira and Linedata U.S.A. involved Linedata employees

in London or Paris only.

The Court must accept properly supported, uncontroverted proffers of evidence by the plaintiff as true. <u>Newman</u>, 700 F. Supp. 2d at 159. Nevertheless, facts put forward by the defendant will also be considered if they are uncontradicted. <u>Id.</u> Risktimetry has produced some evidence that a partnership was realized between Linedata U.S.A. and Altaira in July, 2008 and that Linedata Risk Analytics are still "[p]owered by Altaira". Risktimetry provides 1) copies of a press release from July, 2008 published on the Linedata and Altaira websites entitled "Linedata Services Forms Strategic Partnership with Altaira, Integrating Advanced Risk Analytics into its Product Suite", 2) eight articles from July, 2008 from online news sources that discuss the partnership between Altaira and Linedata U.S.A., and 3) a print-out from the Altaira website from April 1, 2010 which states that Linedata Risk Analytics is "[p]owered by Altaira".

Altaira has produced no evidence rebutting plaintiff's assertions. To the contrary, Altaira offers a letter dated May 28, 2009 signed by Altaira and Linedata agreeing to extend the "Distribution and License Agreement" for one year. Altaira also refers to an email dated November 26, 2009 from Stuart Calder of Linedata stating "I'm sorry things ended badly with Linedata[.]" Both documents indicate that there was an agreement at some point

between the two companies.  Notably, Altaira has not provided the
Court with a copy of the purported revenue sharing agreement or a
termination agreement between Linedata U.S.A. and Altaira.
Moreover, at the October 21, 2010 scheduling conference, the
parties acknowledged that Linedata is currently in possession of
Altaira's source code.  Thus, the Court assumes, for the purposes
of the pending motion to dismiss, that Altaira and Linedata
U.S.A. formed a partnership and entered into a related
distribution and license agreement.

With respect to whether Altaira partnered with Linedata's
Paris or London offices and not Linedata U.S.A., Altaira has not
produced any evidence in that regard.  Moreover, the May 28, 2009
letter included in the defendants' exhibits refers to the
agreement between Altaira and "Linedata Services, Inc." which is
the Massachusetts-based company.  The news articles refer to
"Linedata Services" and do not specify whether the partnership
was formed at the American headquarters in Massachusetts or the
parent's headquarters in Paris.  That remains a question of fact
for the jury.  Thus, the Court assumes for the purpose of the
motion to dismiss that Altaira partnered with Linedata U.S.A., as
Risktimetry alleges.

The Court also finds that the instant copyright infringement
action directly arises out of Altaira's contacts with
Massachusetts, i.e., its partnership with Linedata U.S.A..

Risktimetry claims that Altaira 1) licensed its software to Linedata U.S.A. and 2) caused, induced and/or materially contributed to Linedata U.S.A.'s direct infringement by reproducing, selling and distributing copies of the Altaira System to Linedata U.S.A..  Thus, this action arises directly out of Altaira's contacts with Massachusetts and the Court concludes that the relatedness element is satisfied.

### 2. Purposeful Availment

To satisfy the second requirement

> the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.

Astro-Med, 591 F.3d at 10.  The purposeful availment factor focuses on voluntariness and foreseeability.  Sawtelle, 70 F.3d at 1391.  This requirement

> ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)(internal citations omitted).  Courts will analyze whether the defendant "deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum".  Akro Corp. v. Luker, 45 F.3d 1541, 1545

(Fed. Cir. 1995).

In <u>Burger King Corp.</u> v. <u>Rudzewicz</u>, the United States Supreme
Court held that

> with respect to interstate contractual obligations, we
> have emphasized that parties who 'reach out beyond one
> state and create continuing relationships and
> obligations with citizens of another state' are subject
> to regulation and sanctions in the other State for the
> consequences of their activities.

471 U.S. at 473 (quoting <u>Travelers Health Ass'n</u> v. <u>Virginia</u>, 339
U.S. 643, 647 (1950)).  A contract alone is not enough, there
must be some other evidence that the defendant directed activity
into the forum state.  <u>Platten</u> v, 437 F.3d at 137.  Evidence of a
"substantial and continuing relationship" between the contracting
parties satisfies this requirement.  <u>Burger King Corp.</u>, 471 U.S.
at 487.

The dispositive question before the Court in this case is,
therefore, whether agreeing to partner exclusively with and
license the Altaira System to Linedata U.S.A. constitutes a
"substantial and continuing relationship" with Linedata U.S.A.
and purposeful availment of Massachusetts laws and resources.
The Court finds that it does.  Altaira and Linedata U.S.A.
entered into a Distribution and License Agreement effective July
1, 2008 with the option to extend and renew it.  The option to
renew was exercised by Linedata U.S.A. on May 28, 2009.  Thus,
the intention appears to have been, at least at the contract's

inception, to have a continuing relationship.

The exclusivity of the license agreement and partnership indicates a substantial relationship. By itself, a non-exclusive license with an in-state entity is not sufficient to confer specific jurisdiction. Autogenomics, Inc. v. Oxford Gene Tech, Ltd., No. SACV 07-846-MRP, 2008 WL 7071464, at *4 (C.D. Cal. Jan. 17, 2008). In contrast, an exclusive license agreement with an in-state entity creates continuing obligations between the in-state entity and out-of-state defendant and constitutes purposeful availment. E.g., Akro Corp., 45 F.3d 1541, 1546 (Fed. Cir. 1995)(finding jurisdiction over out-of-state patentee who had exclusively licensed its patent to an in-state corporation where the license agreement required the patentee to "defend and pursue any infringement against" the patent); see Autogenomics, Inc., 2008 WL 7071464, at *4 (holding that patent "licensing activities with in-state entities, even if substantial, are generally insufficient for specific jurisdiction unless they create exclusive relationships between the patentee and residents of the forum.").

Because the alleged exclusive partnership and license agreement between Altaira and Linedata U.S.A. created a substantial and continuing relationship, the Court finds that Altaira purposefully directed its activities into Massachusetts.

Moreover, out-of-state general partners usually can be

hailed into court in the state where the partnership conducts
business because, by investing in the partnership, they have
purposefully availed themselves of the privilege of conducting
activities within the partnership state.  See West v.
Vandenheuvel, 1995 WL 360461, at *4 (N.D. Ill. June 16,
1995)("[t]he extension of jurisdiction through a partnership to
nonparticipant, nonresident partners is predicated upon the
unique liability and agency structure of a partnership, where
general partners are both principals and agents of the
partnership.").

For example, in Intercontinental Leasing, Inc. v. Anderson,
the United States Court of Appeals for the Tenth Circuit
exercised personal jurisdiction over non-resident investing
partners under the Kansas long-arm statute because the
partnership had acquired interests in Kansas oil and gas leases
and rented equipment from a Kansas corporation.  410 F.2d 303,
305 (10th Cir. 1969)("[t]hrough the instrumentality of the
partnership, the individual partners purposefully availed
themselves of the privilege of conducting business activities in
Kansas and invoked the benefits and protections of its laws to
satisfy their personal economic desires.").

Here, Altaira (allegedly) partnered with a Massachusetts
company which has its principal place of business in
Massachusetts and sells to Massachusetts customers.  Thus,

-13-

Altaira has purposefully availed itself of Massachusetts laws and resources and could reasonably have anticipated being sued in a Massachusetts court.

### 3.   Reasonableness

In evaluating whether exercising jurisdiction would be reasonable or would offend traditional notions of fair play and substantial justice, the Court considers what are known as the "Gestalt factors," including 1) the burden on the defendant of appearing, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy and 5) the common interests of all sovereigns in promoting substantive social policies.  Burger King Corp., 471 U.S. at 477.  The reasonableness inquiry operates on a sliding scale with the first two factors of the tripartite analysis.  That is, a particularly strong showing of relatedness and purposeful availment eases the plaintiff's burden of demonstrating reasonableness.  Sawtelle, 70 F.3d at 1394.

Altaira contends that exercising jurisdiction would offend traditional notions of fair play and substantial justice because Altaira conducts business in Utah and it would be significantly burdened by having to defend a lawsuit in Massachusetts.  The First Circuit has held that the first factor is "only meaningful

where a party can demonstrate some kind of special or unusual burden." Pritzker Yari, 42 F.3d 53, 64 (1st Cir. 1994).  Travel from Utah to Massachusetts is not considered a special or unusual burden.  See id. (finding that travel between New York and Puerto Rico was not a special or unusual burden).

With respect to the second factor, Massachusetts has an interest in adjudicating the dispute because it involves a significant contractual relationship with a Massachusetts company.

Analysis of the third factor, the plaintiff's interest in litigating in Massachusetts, is somewhat unusual in this case because the plaintiff is a Delaware company.  Presumably, Risktimetry brought this action in Massachusetts because Altaira's partner, Linedata U.S.A., is a Massachusetts corporation with its principal place of business in Massachusetts.  If the Court were to dismiss the claim against Altaira, Risktimetry would have to bring its claims in Utah, where the courts may not have personal jurisdiction over Linedata U.S.A..  Risktimetry would be placed in a position of having to litigate the same case in two different jurisdictions.  Thus, the plaintiff has a significant interest in litigating this case in Massachusetts.

With respect to the fourth factor, in most cases between private litigants, such as the instant action, the "interest of

the judicial system in the effective administration of justice
does not appear to cut in either direction". <u>Sawtelle</u>, 70 F.3d
at 1395.  Finally, under the fifth factor, the social policy in
favor of protecting intellectual property counsels in favor of
exercising jurisdiction.

For those reasons, the Court's exercise of personal
jurisdiction over the defendant conforms to "traditional notions
of fair play and substantial justice," and is statutorily and
constitutionally permissible.

### ORDER

In accordance with the foregoing, Altaira, LLC's motion to
dismiss for lack of personal jurisdiction (Docket No. 18) is
**DENIED.**


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 3, 2010